[Cite as *State v. Clark*, 2013-Ohio-299.]

IN THE COURT OF APPEALS FOR CLARK COUNTY, OHIO

STATE OF OHIO                                    :

    Plaintiff-Appellee                      :                    C.A. CASE NO.    2012 CA 16

v.                                               :                    T.C. NO.    00CR189

DON A. CLARK                                     :                    (Criminal appeal from
                                                                     Common Pleas Court)

    Defendant-Appellant                     :

                                                 :

. . . . . . . . . .

# O P I N I O N

Rendered on the ___1st___ day of _____February_____, 2013.

. . . . . . . . . .

LISA M. FANNIN, Atty. Reg. No. 0082337, Prosecutor's Office, 50 E. Columbia Street, P.O. Box 1608, Springfield, Ohio 45501
    Attorney for Plaintiff-Appellee

MELISSA M. PRENDERGAST, Atty. Reg. No. 0075482, 250 E. Broad Street, Suite 1400, Columbus, Ohio 43215
    Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

    **{¶ 1}**   Don A. Clark appeals from the trial court's denial of his motion to vacate a void sentence.

{¶ 2}    In his sole assignment of error, Clark contends the trial court erred in denying the motion, which addressed the post-release control portion of his sentence.   Clark claims the trial court erroneously imposed post-release control because its sentencing entry failed to recite the consequences of a post-release control violation.   He asserts that this omission rendered the post-release control portion of his sentence void.   Finally, Clark argues that the trial court cannot now correct the error because he has been released from prison.

I.   Facts and Course of Proceeding

{¶ 3}    The pertinent facts are undisputed. Clark was convicted of aggravated burglary with a deadly-weapon specification in 2000. The trial court imposed a sentence of three years in prison for a "gun specification," to be served prior to and consecutively to an eight-year sentence for the aggravated burglary.   Thus, the total prison sentence was eleven years.   The sentencing entry advised Clark that post-release control was mandatory for "up to a maximum of three years."

{¶ 4}    On September 1, 2010, the trial court held a resentencing hearing.   The court began by noting that the original sentencing entry was void because of improper post-release control, and that sentencing would occur *de novo*.   The court further noted that it could not properly impose a three-year prison sentence for the firearm specification, because the indictment failed to state that the deadly weapon was a firearm.   Because the maximum sentence for the aggravated burglary was ten years, the trial court decided to impose the maximum term for that offense, while giving  Clark credit for the time he had already served – a period of ten years and almost six months (from March 25, 2000 to

September 1, 2010).

{¶ 5}     The trial court correctly advised Clark at the resentencing hearing that a five-year period of post-release control was mandatory.   Transcript of Resentencing Hearing, p. 7.   The trial court also correctly advised Clark about the potential consequences of violating the terms of his post-release control, including the specific amount of additional prison time Clark faced. *Id*. at 7-8.   Specifically, the court stated as follows:

> Defendant's notified that post release control is mandatory in this case for a period of five years.  Violation of any rule of the Parole Authority while on post release control could result in more restrictive sanctions, including going back to prison for up to one half the time imposed by the Court but not to exceed more than 9 months on any one violation.

> If he commits a felony while on post release control, he could go back to prison for at least one year and up to the amount of time remaining on post release control if it's greater than a year. And that sentence would have to be served consecutive to any sentence on the new felony.  He's ordered to pay the costs of prosecution and the court costs in this case.   *Id*.

{¶ 6}     At the end of the resentencing hearing, the trial court asked Clark if he had already signed up for post-release control at the prison, and Clark said that he had not.   The court also asked Clark if he had personal items remaining at the prison, and Clark said yes. The court noted that the easiest thing to do would be to transport Clark back to the prison to get his personal items and to get signed up for post-release control, because the court had previously encountered difficulties in a similar situation.

{¶ 7}     The trial court filed its sentencing entry on September 2, 2010, the day after the sentencing hearing.   Regarding post-release control, the entry stated that:

The Court has further notified the defendant that post release control is mandatory in this case for a period of five years, as well as the consequences for violating conditions of post release control imposed by the Parole Board under Revised Code Section 2967.28. The defendant is ordered to serve as part of this sentence any term of post release control imposed by the Parole Board, and any prison term for violation of that post release control.   Doc. #32, p. 1.

{¶ 8}     Clark did not appeal from the judgment entry filed on September 2, 2010. The record does not clearly indicate when Clark was released from prison, but Clark states in his brief that he was released on September 2, 2010, and the State has not disagreed.   After being placed on post-release control, Clark filed a motion in July 2011, seeking to vacate a "void" sentence.   Doc. #37.   In the motion, Clark contended that the trial court was required to state whether post-release control is mandatory, and was also required to state the precise terms of post-release control in both the sentencing hearing and in the sentencing entry.   Although the sentencing entry imposed five years of mandatory post-release control and stated that Clark had been advised about the "consequences for violating conditions of post release control imposed by the Parole Board under Revised Code Section 2967.28," Clark maintained that the entry was deficient because it failed to specify the amount of prison time he faced for a violation.   Clark argued that the sentencing entry was void, because it failed to include this mandatory notification.    Further, Clark contended that the trial court could no longer hold a sentencing hearing to correct the error, because Clark had

already been released from prison.

{¶ 9}     The trial court overruled Clark's motion, without explanation, in a short entry filed on February 9, 2012.   Doc. #40.   This appeal followed.

## II.   Did the Trial Court Err in Failing to Include the Terms of

## Post-Release Control and to Set Forth the

## Consequences for Violating Post-Release Control Conditions in the Entry?

{¶ 10}     Clark's assignment of error raises two issues for review: (1) whether the trial court's most recent sentencing entry was required to specify the precise consequences of violating post-release control; and (2) if so, what effect the omission has on Clark's post-release control obligation.

{¶ 11}     Our review of the difficult-to-decipher trends in this area of the law indicates that a judgment entry need not be corrected to include the specific consequences for violating post-release control conditions, if the trial court imposes a lawful sentence of post-release control, properly notifies the defendant regarding post-release control and the specific consequences of a violation during the sentencing hearing, and the sentencing entry contains notification regarding the fact that post-release control is being imposed and that a prison term could be ordered for any violation.

## A.   Changes in the Law Prior to the Time Clark was Resentenced

{¶ 12}     In 2000, while upholding the constitutionality of R.C. 2967.28 against a separation of powers challenge, the Ohio Supreme Court stated that "pursuant to R.C.

2967.28(B) and (C), a trial court must inform the offender at sentencing or at the time of a plea hearing that post-release control is part of the offender's sentence." *Woods v. Telb,* 89 Ohio St.3d 504, 513, 733 N.E.2d 1103 (2000). Subsequent "clarifications" began in 2004, when the Ohio Supreme Court noted that a trial court has a duty under R.C. 2967.28(B) and (C) to "notify the offender at the sentencing hearing and to incorporate postrelease control notification into its journal entry." *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 22. In *Jordan*, the court observed that:

> Because a trial court has a statutory duty to provide notice of postrelease control at the sentencing hearing, any sentence imposed without such notification is contrary to law. As a general rule, if an appellate court determines that a sentence is clearly and convincingly contrary to law, it may remand for resentencing. See R.C. 2953.08(G)(2). * * * Furthermore, where a sentence is void because it does not contain a statutorily mandated term, the proper remedy is, likewise, to resentence the defendant. *Id*. at ¶ 23, citing *State v. Beasley*, 14 Ohio St.3d 74, 471 N.E.2d 774 (1984).

{¶ 13}    Relying on *Beasley*, the Ohio Supreme Court stated that " 'Any attempt by a court to disregard statutory requirements when imposing a sentence renders the attempted sentence a nullity or void.' " *Jordan* at ¶ 25. Thus, because the trial courts had failed to notify the various defendants in *Jordan* of post-release control during their sentencing hearings, but had incorporated post-release control into the sentencing entries, the Supreme Court concluded that the sentences must be vacated and the cases must be remanded to the trial court for resentencing. *Id.* at ¶ 27-29.

{¶ 14} Subsequently, in *Hernandez v. Kelly*, 108 Ohio St.3d 395, 2006-Ohio-126, 844 N.E.2d 301, the Ohio Supreme Court granted a petition for a writ of habeas corpus and ordered the release of a prisoner who had violated the terms of his post-release control. At the sentencing hearing, the trial court had incorrectly indicated that post-release control could be imposed for a period of "up to" five years, when the term was mandatory. The trial court also failed to incorporate imposition of post-release control into the sentencing entry. *Id.* at ¶ 2.

{¶ 15} The Ohio Supreme Court rejected the Adult Parole Authority's (APA's) argument that R.C. 2967.28 provided the APA with the authority and duty to impose post-release control. The court noted that nothing in the statute authorized the APA to exercise its authority if the trial court failed to impose post-release control in its sentence. *Id.* at ¶ 18. Furthermore, according to the court, this construction avoided potential separation of powers problems. *Id.* at ¶ 19. Thus, unless the trial court included post-release control in its sentence, the APA did not have authority to impose it. *Id.* at ¶ 20.

{¶ 16} In deciding what remedy would be appropriate, the Ohio Supreme Court rejected resentencing. The court noted that after-the-fact notification of the defendant, who had served his sentence, "would circumvent the objective behind R.C. 2929.14(F) and 2967.28 to notify defendants of the imposition of postrelease control at the time of their sentencing." *Id.* at ¶ 28. The court, therefore, granted the writ of habeas corpus, as the only appropriate remedy.

{¶ 17} In response to *Hernandez*, the General Assembly enacted Am.Sub.H.B. 137, which became effective as an "emergency measure" on July 11, 2006. The act

amended R.C. 2929.19(B)(3)(c), to indicate that if a court imposes sentence on or after the effective date of the act, the court's failure to notify an offender that he will be supervised under R.C. 2967.28 after he leaves prison, or to include a statement to that effect in the judgment of conviction "does not negate, limit, or otherwise affect the mandatory period of supervision that is required for the offender under division (B) of section 2967.28 of the Revised Code." R.C. 2929.19(B)(3)(c). *See, also*, Legislative Analysis accompanying the Final Version of Am.Sub.H.B. No. 137, and Fiscal Note & Local Impact Statement, dated Mary 25, 2006.

{¶ 18} As amended in 2006, R.C. 2929.19(B)(3)(e) also contained similar provisions regarding the effect of a trial court's failure to notify an offender or to include a statement in the judgment of conviction about the possible prison term that can be imposed for violations of post-release control. However this particular provision is qualified, to some degree, because it states that the trial court's failure does not negate the parole board's authority to so impose a prison term for a violation, "if, pursuant to division (D)(1) of section 2967.28 of the Revised Code, the parole board notifies the offender prior to the offender's release of the board's authority to so impose a prison term." The amendments also add the same basic language to R.C. 2927.28(B) and (D)(1), and to R.C. 2929.14(F).

{¶ 19} Am.Sub.H.B. No. 137 added a new section, R.C. 2929.191, which outlines procedures to be used to correct a judgment of conviction where a trial court fails to notify an offender about post-release supervision, or the possibility of the parole board imposing a prison sentence for violations of supervision or post-release control.

{¶ 20} After the amendments became effective, the Ohio Supreme Court again

considered a habeas petition. This time, the court was asked to release twelve prisoners who were in prison for violating post-release control. See *Watkins v. Collins,* 111 Ohio St.3d 425, 2006-Ohio-5082, 857 N.E.2d 78, ¶ 1. In *Watkins*, the Ohio Supreme Court did not specifically discuss the content of the sentencing hearings. However, each of the sentencing entries contained discretionary language regarding the terms of post-release control, when post-release control was, in fact, mandatory. *Id.* at ¶ 2-24, and 42. The court distinguished its prior decisions in *Woods* and *Jordan*, because those cases had focused on whether the prisoner had received proper notification at the sentencing hearing, not on the content of the entry. The court stressed that "Here, while not specifying the postrelease control as mandatory, the trial courts did at least notify the petitioners at their sentencing hearings that they could be subject to postrelease control." *Id.* at ¶ 46.

{¶ 21} The court stated that its prior decisions in *Hernandez*, 108 Ohio St.3d 395, 2006-Ohio-126, 844 N.E.2d 301, *Gensley v. Eberlin*, 110 Ohio St.3d 1474, 2006-Ohio-4474, 853 N.E.2d 313, and *Adkins v. Wilson*, 110 Ohio St.3d 1454, 2006-Ohio-4275, 852 N.E.2d 749, were more relevant, because the court in those cases had granted writs and had ordered prisoners released, where the sentencing entry contained no reference to post-release control. *Watkins* at ¶ 48. Nonetheless, the Ohio Supreme Court distinguished these cases as well, stating that:

> While these entries erroneously refer to discretionary instead of mandatory postrelease control, they contain significantly more information than any of the sentencing entries held insufficient by the court in *Hernandez* (no reference to postrelease control), *Adkins* (no reference to postrelease control), and *Gensley* (vague

reference about petitioner's understanding of possible penalties). Consequently, the sentencing entries are sufficient to afford notice to a reasonable person that the courts were authorizing postrelease control as part of each petitioner's sentence. A reasonable person in the position of any of the petitioners would have had sufficient notice that postrelease control could be imposed following the expiration of the person's sentence. Any challenge to the propriety of the sentencing court's imposition of postrelease control in the entries could have been raised on appeal. The same could not be said about the sentencing entries at issue in *Hernandez*, *Adkins*, and *Gensley*. *Watkins* at ¶ 51.

{¶ 22} Accordingly, the court denied the petitions, because the prisoners had an adequate remedy by way of appeal. *Id.* at ¶ 53.

{¶ 23} One month later, the Ohio Supreme Court issued its decision in *State ex rel. Cruzado v. Zaleski*, 111 Ohio St.3d 353, 2006-Ohio-5795, 856 N.E.2d 263. *Cruzado* involved an action for a writ of prohibition that asked the Ohio Supreme Court to vacate an entry resentencing a criminal defendant. *Id.* at ¶ 1. The defendant was originally sentenced in 2003, and was notified about post-release control and the penalty for violations both in the plea agreement and at the sentencing hearing. He was incorrectly told, however, that he would be subject to a five-year term, when he was only subject to three years of post-release control. *Id.* at ¶ 7. Before the defendant's sentence expired, the trial court held a resentencing hearing, at which the defendant was informed of the mandatory three-year term and the possible penalties for violation. The judge also filed a judgment entry reflecting these facts. *Id.* at ¶ 10-11.

**{¶ 24}** The Ohio Supreme Court noted that trial courts cannot reconsider their own valid judgments in criminal cases, subject to two exceptions – (1) trial courts can correct void sentences; and (2) they can also correct clerical errors in judgments, but the correction is limited to " ' "reflecting what the court actually decided, not what the court might or should have decided." ' " (Citations omitted.) *Id.* at ¶ 19.

**{¶ 25}** The Ohio Supreme Court concluded that the error fell within the first exception, because the 2003 sentencing entry did not include the three-year post-release term required by statute. In this regard, the court again discussed voidness, stating that:

"Any attempt by a court to disregard statutory requirements when imposing a sentence renders the attempted sentence a nullity or void." *Beasley*, 14 Ohio St.3d at 75, 14 OBR 511, 471 N.E.2d 774. "[W]here a sentence is void because it does not contain a statutorily mandated term, the proper remedy is * * * to resentence the defendant." *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 23. *Cruzado* at ¶ 20.

**{¶ 26}** The Ohio Supreme Court distinguished *Hernandez*, because the trial judge had advised Cruzado at both the plea and sentencing hearing that he would be subject to mandatory post-release control. Consequently, the trial court had provided "some notice" that Cruzado would be subject to a multi-year term of control. *Id.* at ¶ 26. Furthermore, in contrast to the petitioner in *Hernandez*, Cruzado's sentence had not yet expired when he was resentenced, and the trial court "was authorized to correct the invalid sentence." Id. at ¶ 28. Accordingly, the trial court had jurisdiction, and the defendant had an adequate remedy by appealing from the resentencing. *Id.* at ¶ 32.

{¶ 27}     In July 2007, the Supreme Court of Ohio considered a case in which the trial court failed to properly inform the defendant about post-release control at his sentencing hearing, but allowed for post-release control in the sentencing entry.  *State v. Bezak*, 114 Ohio St.3d 94, 2007-Ohio-3250, 868 N.E.2d 961, ¶ 3.   By the time the direct appeal from the conviction and sentence reached the Ohio Supreme Court, the defendant had already served his prison term.   Relying on *Jordan*, the Ohio Supreme Court held that the sentence was void and must be vacated, and the matter must be remanded for resentencing.   *Id.* at ¶ 12-13 and 16.   The court stressed that

> "The effect of determining that a judgment is void is well established.   It is as though such proceedings had never occurred; the judgment is a mere nullity and the parties are in the same position as if there had been no judgment."   *Id.* at ¶ 12, quoting from *Romito v. Maxwell,* 10 Ohio St.2d 266, 267-268, 227 N.E.2d 223 (1967).

{¶ 28}     However, because the defendant had already served his term, the court held that he could not be subject to resentencing to correct the failure to impose post-release control.   The trial court was instructed to note this fact on the record.   *Id.* at ¶ 18.

{¶ 29}     The Ohio Supreme Court continued to apply the voidness doctrine in subsequent cases.   See *State v. Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, 884 N.E.2d 568, ¶ 20-24 (defendant was informed of post-release control, but entry did not impose it. Defendant could be resentenced, because the sentence is void and he was still in prison), and *State v. Bloomer*, 122 Ohio St.3d 200, 2009-Ohio-2462, 909 N.E.2d 1254, ¶ 27-28 (resentencing does not offend the Double Jeopardy or Due Process clauses.   Jeopardy does

not attach to a void sentence, and there is no reasonable, legitimate expectation of finality in a void sentence).

{¶ 30}   In *Bloomer*, the Ohio Supreme Court also considered and rejected a separation of powers challenge to R.C. 2929.191, based on the defendant's failure to identify any existing rule of criminal procedure that conflicted with the statute.   *Id.* at ¶ 39-43. And, in the case of one of the three defendants in *Bloomer*, the trial court failed to state the length of post-release control at the sentencing hearing and in the sentencing entry.   Because the defendant had completed his prison term and had been released, the court held that he could not be resentenced.   *Id.* at ¶ 69-70.

{¶ 31}   In *Bloomer*, the Ohio Supreme Court did briefly consider the amendment to R.C. 2929.14(F), which as noted, indicates that failure to include a post-release control requirement in the sentence does not affect the mandatory period of control that is required for the offender under R.C. 2967.28(B).   The court limited its analysis to observing that nothing in division (F) provides that the executive branch could impose post-release control if the sentencing court has not ordered it.   *Id.* at ¶ 72.

{¶ 32}   In *State v. Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434, 920 N.E.2d 958, the Ohio Supreme Court considered the application of R.C. 2929.191, which provides a statutory mechanism for correcting sentences that fail to comply with statutory requirements for imposing post-release control.   The court concluded that the statute could not apply to sentences imposed before its effective date.   In this regard, the court observed that:

> We recognize the General Assembly's authority to alter our caselaw's characterization
>
> of a sentence lacking postrelease control as a nullity and to provide a mechanism to

correct the procedural defect by adding postrelease control at any time before the defendant is released from prison. However, for sentences imposed prior to the effective date of the statute, there is no existing judgment for a sentencing court to correct. H.B. 137 cannot retrospectively alter the character of sentencing entries issued prior to its effective date that were nullities at their inception, in order to render them valid judgments subject to correction. Therefore, for criminal sentences imposed prior to July 11, 2006, in which a trial court failed to properly impose postrelease control, the de novo sentencing procedure detailed in decisions of the Supreme Court of Ohio should be followed to properly sentence an offender. *Id.* at ¶ 26.

{¶ 33} The court further concluded that "[f]or criminal sentences imposed on and after July 11, 2006, in which a trial court failed to properly impose postrelease control, trial courts shall apply the procedures set forth in R.C. 2929.191." *Id.* at paragraph two of the syllabus. Three members of the court dissented from the second paragraph of the syllabus, contending that the question of whether R.C. 2929.191 is prospective was not before the court, because the only defendant in the case had been sentenced long before the statute was enacted. *Id.* at ¶ 38 (Pfeifer, J., concurring in part and dissenting in part, and joined by Justices Moyer and O'Connor.)

{¶ 34} The three dissenting justices also argued that R.C. 2929.191 was clear and limited its own application to sentences imposed prior to the effective date of the act. *Id.* at ¶ 39-48. They also remarked that R.C. 2929.191 was enacted "to fix sentencing mistakes of the past – mistakes that gained practical relevance only after" the court's decisions in *Jordan*

and *Hernandez.* *Id.* at ¶ 48. Finally, the dissent noted that:

Amendments made to other statutes amended by Am.Sub.H.B. No. 137, Baldwin's Ohio Legislative Service Annotated (Vol. 4, 2006) L–1911 ("H.B. 137"), make it clear that R.C. 2929.191 was intended to address past mistakes. The intent of H.B. 137 was to make prospective postrelease-control sentencing errors basically irrelevant. For example, R.C. 2929.14(F)(1) was amended by H.B. 137 to include this language:

"If a court imposes a sentence including a prison term of a type described in this division on or after the effective date of this amendment, the failure of a court to include a post-release control requirement in the sentence pursuant to this division does not negate, limit, or otherwise affect the mandatory period of post-release control that is required for the offender under division (B) of section 2967.28 of the Revised Code."

The amendment to R.C. 2929.14(F)(1) then adds that R.C. 2929.191 applies to sentences imposed prior to the effective date of the act:

"Section 2929.191 of the Revised Code applies if, prior to the effective date of this amendment, a court imposed a sentence including a prison term of a type described in this division and failed to include in the sentence pursuant to this division a statement regarding post-release control." H.B. 137, L–1929.

H.B. 137 similarly amended R.C. 2929.19(B) and 2967.28(B). All of these amendments attempt to make prospective mistakes nonproblematic and employ R.C. 2929.191 to address past errors. For the General Assembly, the prospective

application of R.C. 2929.191 was never a consideration. *Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434, 920 N.E.2d 958, at ¶ 49-53 (Pfeiffer, J., concurring in part and dissenting in part).

**{¶ 35}** Thus, at least in the minority view, the amendments in Am.Sub.H.B. No. 137 were intended to make post-July 11, 2006 sentencing errors "basically irrelevant." Notably, the majority opinion did not address this point.

**{¶ 36}** Subsequently, in *State v. Ketterer*, 126 Ohio St.3d 448, 2010-Ohio-3831, 935 N.E.2d 9, the Ohio Supreme Court considered the validity of a nunc pro tunc entry which was used to correct errors that had occurred when a three-judge panel resentenced a defendant for non-capital offenses. *Id.* at ¶ 65. The court noted that R.C. 2929.191 applied because the resentencing hearing occurred after July 11, 2006. *Id.* at ¶ 69.

**{¶ 37}** The Ohio Supreme Court concluded that the nunc pro tunc entry was ineffective because there was no indication in the record that a hearing, as required by R.C. 2929.191(C), had been conducted. *Id.* at ¶ 76. The court also discussed several errors that occurred in notifying the defendant of post-release control – two took place at the resentencing hearing, and two were contained in the nunc pro tunc entry. *Id.* at ¶ 78. In this regard, the court stressed that:

> Viewed cumulatively, these errors on the part of the trial court cannot be considered harmless. We have stated that "the court must conduct proceedings in capital cases with a strict level of care that comports with their unique status." *State v. Clinkscale*, 122 Ohio St.3d 351, 2009-Ohio-2746, 911 N.E.2d 862, ¶ 23. Accordingly, while the dissent is correct that it is highly unlikely that Ketterer will

ever be subject to postrelease control, trial courts in capital cases must scrupulously comply with the applicable statutes and rules, even those involving postrelease control. *Id.*

**{¶ 38}** One of the errors involved the content of the nunc pro tunc entry. Concerning this matter, the court noted:

> The nunc pro tunc entry contains another error, which Ketterer does not raise. The nunc pro tunc entry does not state that Ketterer was informed that if he violated his supervision or a condition of postrelease control, the parole board could impose a maximum prison term of up to one-half of the prison term originally imposed, which here is an aggregate 11 years. See R.C. 2929.19(B)(3)(e). Ketterer was correctly advised of this condition of postrelease control during the resentencing hearing. However, the nunc pro tunc entry incorrectly states, "The defendant is ordered to serve as part of this sentence any term of post release control imposed by the Parole Board, and any prison term for violation of that post release control." Thus, the nunc pro tunc entry should be amended to incorporate the correct language of this rule. See R.C. 2929.191(B)(1). *Ketterer* at ¶ 77.

**{¶ 39}** Based on the Supreme Court decisions up to this date (August 2010), several conclusions could be reached:

**{¶ 40}** (1) *De novo* sentencing procedures apply to sentences imposed before July 11, 2006, because the failure to notify a defendant of the imposition of post-release control renders the sentence void, and the sentence is null, as if it had never occurred; (2) R.C. 2929.191 applies to sentences imposed after July 11, 2006, and a hearing is required; (3)

The legislature attempted to make post-release control errors irrelevant when it enacted Am.Sub.H.B. 137; (4) Courts should include provisions in their sentencing entries that specifically discuss the imposition of prison terms for violating post-release control, but it is possible that the failure to include such a term in a non-capital case is subject to a harmless error analysis, meaning that if the trial court properly instructs the defendant at the sentencing hearing as to the imposition of post-release control and the penalties for violating it, no harm has been done; (5) If the defendant has been released from prison without having been notified of post-release control, he cannot be resentenced. However, the cases in which this has occurred are those where the court failed to notify the defendant at the sentencing hearing that post-release control was being imposed. Where the defendant received some notice, even if not totally accurate, habeas or prohibition, at least, will not be used to rectify the situation, because the defendant had an adequate remedy at law by way of appealing the sentence.

{¶ 41} Clark was resentenced in September 1, 2010. Under the existing law, his sentence was void and he was subject to the *de novo* sentencing provisions that had been outlined by the Ohio Supreme Court. R.C. 2929.191 would not apply to the resentencing, because Clark was originally sentenced prior to July 11, 2006. At the hearing, the trial court applied complete *de novo* sentencing by dismissing one count (the three-year firearm specification), increasing the sentence for the remaining count from eight years to ten years, and imposing post-release control. The court properly notified Clark about post-release control and the penalties for violations during the sentencing hearing, but the sentencing entry fails to incorporate the specific terms of the penalties for violating post-release control.

{¶ 42}   Under the applicable law at that time, Clark's sentence, if challenged further, was a new sentence, imposed after July 11, 2006, and any corrections to that sentence would be governed by R.C. 2929.191.   If the amendments to the statutes control and do not violate some constitutional provision like due process (which has not been raised), the failure to put specific language about the violation in the sentencing entry would be irrelevant.   Similarly, if a "harmless error" analysis potentially applies, no harm has been done, because   Clark was properly notified of the imposition of post-release control and the penalties for a violation during the sentencing hearing, and he could have appealed from that judgment.   The law has continued to evolve, however, casting doubt on these conclusions.

B.   Changes in the Law After Clark was Resentenced

{¶ 43}   After Clark was resentenced, the Ohio Supreme Court issued its decision in *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332.   The court noted that its statements of law about void and voidable judgments had "sparked a recurrent and increasingly divisive debate in our case law on sentences that fail to properly impose postrelease control in accordance with the terms mandated by the General Assembly."   *Id.* at ¶ 6.   The Ohio Supreme Court insisted on retaining the voidness concept, but also relied on the related concept of the "illegal sentence doctrine" to hold that "when a judge fails to impose statutorily mandated postrelease control as part of a defendant's sentence, that part of the sentence is void and must be set aside."   *Id.* at ¶ 26.   However, res judicata applies to the other aspects of the merits of the conviction, and the scope of the appeal from

resentencing in which "a mandatory term of post-release control is imposed is limited to issues arising at the resentencing hearing." *Id.* at ¶ 40.

{¶ 44} Shortly after *Fisher* was decided, the Ohio Supreme Court issued its decision in *State ex rel. Womack v. Marsh*, 128 Ohio St.3d 303, 2011-Ohio-229, 943 N.E.2d 1010. In *Womack*, the trial court had imposed the proper term of post-release control at the sentencing hearing, but had incorrectly referred to a different term in the sentencing entry. Upon the defendant's request for a *de novo* hearing, the trial court filed an entry correcting the error, rather than holding a hearing. *Id.* at ¶ 3-4. The Ohio Supreme Court concluded that a new sentencing hearing was not required, because the defendant was properly notified at the sentencing hearing of the correct term, and the failure to include the post-release term in the sentencing entry was "clerical." The trial court, therefore, could use a nunc pro tunc entry to correct the error. *Id.* at ¶ 14.[1]

{¶ 45} Another major decision in this group of cases from the Ohio Supreme Court is *State v. Qualls*, 131 Ohio St.3d 499, 2012-Ohio-1111, 967 N.E.2d 718. *Qualls* involved an offender who had been properly notified about post-release control at his sentencing hearing in 2002. However, the sentencing entry failed to contain language indicating that notification was made. *Id.* at ¶ 1. In 2010, the trial court corrected the omission using a nunc pro tunc entry and denied the defendant's request for a de novo sentencing hearing. *Id.*

{¶ 46} Relying on *Womack*, the Ohio Supreme Court held that no new sentencing hearing was required and that the mistake could be corrected using a nunc pro tunc entry. The court

---

[1] *Womack* was a pre-July 11, 2006 case, so R.C. 2929.191 did not apply.

reasoned that notification was properly given in the sentencing hearing and the error in the sentencing entry was "merely clerical in nature." *Id.* at ¶ 14. The court further noted that the nunc pro tunc entry related back to the original sentencing entry and did not extend the time to file an appeal. *Id.*

{¶ 47} In discussing the issues, the court noted two important principles in its post-release control precedents. The first was that "unless a sentencing entry that did not include notification of the imposition of postrelease control is corrected before the defendant completed the prison term for the offense for which postrelease control was to be imposed, postrelease control cannot be imposed." *Id.* at ¶ 16. The court concluded that this principle was not at issue due to the lengthy term the defendant was serving. Thus, even if the court reversed and remanded for a new sentencing hearing, the trial court would still be able to timely issue the new sentencing entry. *Id.* at ¶ 17.

{¶ 48} The second principle was the importance of notification. In this regard, the court stressed that its main focus in interpreting the sentencing statutes on post-release control "has always been on the notification itself and not the sentencing entry." *Qualls* at ¶ 19. The court distinguished its prior decisions in *Jordan* and *Singleton* because "*notification* of postrelease control was not proper in either of those cases." (Emphasis sic.) *Id.* at ¶ 21. In addition, the court distinguished many of its other post-release control precedents by stating that:

> In no previous case in which a sentencing entry was silent as to postrelease control have we specifically considered the significance of proper postrelease-control notification at the sentencing hearing. Moreover, we have not specifically evaluated

the efficacy of a trial court's use of a nunc pro tunc entry to correct a deficient sentencing entry when the sole error in imposing postrelease control was the failure to incorporate the notification that was given at the sentencing hearing into the entry of conviction. *Id.*

{¶ 49} The court went on to note that:

Here, where notification was properly given at the sentencing hearing, there is no substantive prejudice to a defendant if the sentencing entry's failure to mention postrelease control is remedied through a nunc pro tunc entry. Our precedents requiring a new sentencing hearing (either de novo or limited) to correctly impose postrelease control do not apply to this situation. The rationale underlying those decisions is that a sentence that does not properly impose postrelease control is void, and a remand for a new sentencing hearing is necessary, because the trial court's erroneous imposition of postrelease control must be corrected in a new hearing at which the defendant is present to receive notification that complies with the statutes. See, *e.g., Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, at ¶ 17 and 23.

But when the notification of postrelease control was properly given at the sentencing hearing, the essential purpose of notice has been fulfilled and there is no need for a new sentencing hearing to remedy the flaw. The original sentencing entry can be corrected to reflect what actually took place at the sentencing hearing, through a nunc pro tunc entry, as long as the correction is accomplished prior to the defendant's completion of his prison term. *Qualls* at ¶ 23-24.

**{¶ 50}** Finally, the court concluded – despite the fact that R.C. 2929.191(C) requires hearings – that its decision "by its nature applies to those postrelease-control cases involving an omission of the type that occurred here, without regard to whether the sentencing hearing was held after the effective date of R.C. 2929.191 or held prior to the effective date of that statute * * *." *Id.* at ¶ 29.

**{¶ 51}** In view of the Supreme Court's comments in *Qualls*, we could conclude that the sentencing entry in the case before us could have been corrected by nunc pro tunc entry before Clark was released from prison, because Clark was properly informed at the sentencing hearing about the imposition of post-release control and the penalties for violations. We could then also conclude that the entry could not be corrected at this point, and that Clark is not subject to post-release control, because he has already been released from prison. However, several factors undermine that analysis.

**{¶ 52}** First, at ¶ 16 of its opinion in *Qualls*, the Ohio Supreme Court referred to both *Hernandez,* 108 Ohio St.3d 395, 2006-Ohio-126, 844 N.E.2d 301, and *Watkins,* 111 Ohio St.3d 425, 2006-Ohio-5082, 857 N.E.2d 78. The court observed that in *Hernandez*, the defendant had received no notification about post-release control, and post-release control could not be imposed after he had completed his prison term. *Qualls*, 131 Ohio St.3d 499, 2012-Ohio-1111, 967 N.E.2d 718, ¶ 16. However, the court then invited a comparison between *Hernandez* and *Watkins*, noting that in *Watkins*, "when a sentencing entry made some reference to postrelease control, any deficiencies in the entry could have been raised on appeal, and postrelease control can be imposed upon the defendant's release from prison." *Id.*

**{¶ 53}** As was noted, *Watkins* involved a number of violators who sought to be released from prison because they had not been properly sentenced to post-release control. Their sentencing entries indicated that post-release control was discretionary rather than mandatory. *Watkins* at ¶ 46 and 51. Several sentencing entries in *Watkins* are also similar to the entry in the case before us, in that they do not refer to specific terms that could be imposed for violations of post-release control. Instead, the entries refer to the fact that the defendant was subject to the consequences of violating post-release control under R.C. 2967.28, and that the defendant was ordered to serve any prison term imposed for the violation. *See*, *id*., at ¶ 3, 9, 13, 14, 15, and 24. Again, the Supreme Court noted in *Watkins* that:

> [T]he sentencing entries are sufficient to afford notice to a reasonable person that the courts were authorizing postrelease control as part of each petitioner's sentence. A reasonable person in the position of any of the petitioners would have had sufficient notice that postrelease control could be imposed following the expiration of the person's sentence. Any challenge to the propriety of the sentencing court's imposition of postrelease control in the entries could have been raised on appeal. The same could not be said about the sentencing entries at issue in *Hernandez*, *Adkins*, and *Gensley*. *Watkins* at ¶ 51.

**{¶ 54}** Without explicitly abandoning the voidness doctrine or directly acknowledging a departure, the Ohio Supreme Court nonetheless seems to suggest in *Qualls* that if proper notification of post-release control is given during the sentencing hearing, and if some form of post-release control is imposed in the sentencing entry, the defendant is on notice that

post-release control will be imposed following release from prison. Post-release control can, therefore, be imposed, despite technical defects in the entry. This appears to be consistent with the view that Am.Sub.H.B. No. 137 was intended to make "prospective mistakes nonproblematic." *Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434, 920 N.E.2d 958, at ¶ 49-53 (Pfeiffer, J., concurring in part and dissenting in part). Again, however, the law has continued to evolve.

### C.   Post-*Qualls* Jurisprudence

**{¶ 55}**   Consistent with *Qualls*, the Ninth District Court of Appeals in 2012 upheld imposition of post-release control despite technical deficiencies in the sentencing entry. *See State v. Lynch*, 9th Dist. Lorain No. 11CA010031, 2012-Ohio-2975.[2]

**{¶ 56}**   The defendant in *Lynch* was originally sentenced in 2002, and a resentencing hearing was held in 2008, to address the defendant's claim that the trial court had failed to properly impose post-release control. *Id.* at ¶ 2. The defendant did not dispute that the trial court had properly notified him of post-release control at the resentencing hearing. Instead, he challenged the language used in the sentencing entry, which provided that he was subject to "up to a maximum of five years post-release control." *Id.* at ¶ 2 and 10. Unlike Clark, the defendant in *Lynch* did file an appeal from the resentencing. After that appeal was unsuccessful, the defendant served the rest of his prison sentence and then filed a motion to terminate post-release control, contending that the control had not been properly imposed. *Id.* at ¶ 3. The trial court denied the motion, and

---

[2] Subsequently overruled, see ¶ 64, infra.

the defendant appealed.

{¶ 57}   The Ninth District Court of Appeals discussed *Qualls*, and noted that "[t]he issue of whether postrelease control that was improperly imposed in a sentencing entry could be imposed after an offender's release from prison was not directly implicated in *Qualls*." *Id.* at ¶ 12.   Nonetheless, the Ninth District Court of Appeals concluded that the Ohio Supreme Court had discussed the issue, and had distinguished between "sentencing entries that made no reference to postrelease control and those that incorrectly set forth the terms of post-release control."   *Id.*, referring to the distinction in *Qualls* at ¶ 16, between *Hernandez,* 108 Ohio St.3d 395, 2006-Ohio-126, 844 N.E.2d 301, and *Watkins*, 111 Ohio St.3d 425, 2006-Ohio-5082, 857 N.E.2d 78.   Based on the case's similarity to *Watkins*, the Ninth District Court of Appeals concluded that the sentencing entry "contained sufficient language to authorize the Adult Parole Authority to exercise post-release control over the defendant." *Id.* at ¶ 14.   Accordingly, the court affirmed the denial of the defendant's motion to terminate post-release control.   *Id.* at ¶ 15.

{¶ 58}   Other districts have also taken a flexible approach to errors in post-release control entries. For example, in *State v. Bartee*, 8th Dist. Cuyahoga No. 97411, 2012-Ohio-3944, post-release control was mandatory, but the trial court used the phrase "if postrelease control is imposed" in the entry.   *Id.* at ¶ 17.   The Eighth District Court of Appeals considered the use of the word "if" to be a case of "form over substance" not requiring a new sentencing hearing, where notification of post-release control was properly given at the sentencing hearing.   *Id.* at ¶ 18, citing *State v. Harris*, 4th Dist. Pickaway No. 11CA15, 2012-Ohio-2185, and *Qualls*, 131 Ohio St.3d 499, 2010-Ohio-1111, 967 N.E.2d

718. Notably, the Eighth District Court of Appeals did not even direct the filing of a nunc pro tunc entry to correct the alleged error, presumably because the court concluded that no error existed, or that if error existed, it was harmless. *Id.*

{¶ 59} We also note that since September 2010, the Tenth District Court of Appeals has followed an approach that purports to apply Ohio Supreme Court precedent and concludes that "the trial court sufficiently fulfilled its statutory obligations when its oral and written notifications, taken as a whole, properly informed the defendant of post-release control." *State v. Boone*, 2012-Ohio-3653, 975 N.E.2d 546, ¶ 18 (10th Dist.), citing *State v. Mays*, 10th Dist. Franklin No. 10AP-113, 2010-Ohio-4609, *appeal not allowed*, 127 Ohio St.3d 1535, 2011-Ohio-376, 940 N.E.2d 987, and *State v. Townsend*, 10th Dist. Franklin No. 10AP–983, 2011-Ohio-5056. The Tenth District Court of Appeals describes this as a " 'totality of the circumstances' " test, which considers a combination of: (1) judgment entries that alone may be insufficient to properly impose post-release control; (2) other documents in the record like plea agreements; and (3) sentencing hearing transcripts. *Boone* at ¶ 25.

{¶ 60} *Boone* was decided after the Ohio Supreme Court issued the decision in *Qualls*. In *Boone*, the defendant had been originally sentenced in 1997, and was told at the sentencing hearing that he was subject to a period of post-release control of "up to" five years. He was also told of the consequences of a violation. The "Prison Imposed" notice the defendant signed at the hearing did not specify whether the period was discretionary or mandatory, but did spell out the mandatory nature of the term in a "note" at the bottom of the page. *Id.* at ¶ 3-4. The notice also warned of the specific consequences for violations. *Id.*

In its judgment entry, the trial court simply recited that the defendant had been notified orally and in writing of the applicable periods of post-release control.  *Id.* at ¶ 5. Subsequently, the trial court twice overruled the defendant's motions for resentencing, stating that the sentence would be modified, if required, prior to his release.  *Id.* at ¶ 6-7.

**{¶ 61}**  After discussing various cases applying the "totality of the circumstances" test, the Tenth District Court of Appeals noted the statement in *Qualls* that the Ohio Supreme Court's " 'main focus in interpreting the sentencing statutes regarding postrelease control has always been on the notification itself and not on the sentencing entry.' " *Id.* at ¶ 22, quoting from *Qualls*, 131 Ohio St.3d 499, 2012-Ohio-1111, 967 N.E.2d 718, ¶ 19.

**{¶ 62}**  Ultimately, the Tenth District concluded that the defendant had been properly notified under the totality of the circumstances.  Furthermore, although the trial court had mistakenly informed the defendant that his term of post-release control was "up to five years," when the correct figure was three years mandatory, the court held that "the mistake did not render the judgment void."  *Id.* at ¶ 28.  In this regard, the court noted that:

> [E]ven though the phrase "up to" has "discretionary" connotations, mistaken use of such language does not render defendant's post-release control notification void. * * * Thus, a sentencing entry incorporating post-release control as part of the sentence, but mistakenly including "up to" language, is [a] "non-jurisdictional" defect and concerns, "at most, voidable error that should be raised on direct appeal."  *Id.* at ¶ 30.

**{¶ 63}**  The Tenth District Court of Appeals thus concluded that the appropriate remedy was for the defendant to challenge the sentence on direct appeal from his original

conviction, and since he had not done so, he was barred from raising the claims by res judicata. *Id.* at ¶ 34.

{¶ 64} Very recently, the Supreme Court reversed *Lynch*. See *Lynch*, No. 2012-1361, 2012-Ohio-5730 (Dec. 6, 2012), at ¶ 1. This was based on *State v. Billiter*, No. 2011-1501, 2012-Ohio-5144 (Nov. 7, 2012), which held that a defendant is not barred by principles of res judicata from collaterally attacking his sentence (and a subsequent conviction for escape based on the void post-release control portion of the original case), if a trial court improperly sentences a defendant to a term of post-release control. *Id*. at ¶ 1. Thus, we assume that portion of *Boone* concerning res judicata was also overruled, albeit sub silentio.

{¶ 65} *Billiter* involved a defendant who had originally been sentenced in 1998 to "up to" a maximum of post-release control rather than the five years required by R.C. 2967.28(B). 2012-Ohio-5144, at ¶ 2. The defendant, Billiter, did not appeal that sentence, and was released from prison in 2001. After being released, Billiter was placed on post-release control and complied with the terms for nearly three years, when he was indicted on a charge of escape from his post-release control detention. *Id*. at ¶ 3 and 12. After pleading guilty to this charge, Billiter was placed on community control. He did not appeal this sentence. *Id*. at ¶ 3. Billiter almost immediately violated the terms of his community control. His community control was then revoked, and he was sentenced to six years in prison on the escape charge. Billiter again did not appeal. *Id*. at ¶ 4.

{¶ 66} Almost four years later, Billiter filed a pro se motion to vacate his conviction on the escape charge, alleging that the post-release control portion of his 1998

sentence was void and that, accordingly, he was innocent of the escape charge. *Id*. at ¶ 5. The motion was denied, and the Fifth District Court of Appeals affirmed the denial. Billiter did not appeal to the Ohio Supreme Court for discretionary jurisdiction. *Id*. Subsequently, in 2010, Billiter filed a second motion, this time through counsel, and again argued that he had never legally been placed on post-release control. This motion was also denied, and the Fifth District Court of Appeals affirmed and certified a conflict. *Id*. at ¶ 6.

**{¶ 67}** In a four-to-three decision, *Billiter* concluded that:

> [T]he trial court failed to sentence Billiter to a correct term of postrelease control. Accordingly, his sentence was void. *Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, paragraph one of the syllabus. The trial court's incorrect sentence for postrelease control in 1998 was insufficient to confer authority upon the Adult Parole Authority to impose up to three years of postrelease control on Billiter. *Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 17. Although the Adult Parole Authority actually did place Billiter under supervision, see R.C. 2921.01(E), and Billiter did violate the terms of that postrelease control in violation of R.C. 2921.34(A)(1), Billiter's escape conviction was based on an invalid sentence. Accordingly, the trial court was without jurisdiction to convict him on the escape charge. *Billiter*, 2012-Ohio-5144, at ¶ 12.

**{¶ 68}** In its decision, the court did not discuss *Qualls* or other prior potentially conflicting opinions. Instead, the majority noted that:

> As we have consistently stated, if a trial court imposes a sentence that is unauthorized by law, the sentence is void. " 'The effect of determining that a

judgment is void is well established. It is as though such proceedings had never occurred; the judgment is a mere nullity and the parties are in the same position as if there had been no judgment.' " *Bezak*, 114 Ohio St.3d 94, 2007-Ohio-3250, 868 N.E.2d 961, ¶ 12, quoting *Romito v. Maxwell*, 10 Ohio St.2d 266, 267–268, 227 N.E.2d 223 (1967). ( *Bezak* was later modified by *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, paragraph two of the syllabus.) We said in *Fischer* that a void postrelease-control sentence "is not precluded from appellate review by principles of res judicata, and may be reviewed at any time, on direct appeal or collateral attack." Id. at paragraph one of the syllabus.

Fischer applies to every criminal conviction, including a collateral attack on a void sentence that later results in a guilty plea to the crime of escape. *Billiter* at ¶10-11.

**{¶ 69}** Two members of the dissent commented on the "quagmire created in the void/voidable line of cases." *Id*. at ¶ 15. Among other things, the dissent noted that "commentators have begun questioning this court's jurisprudence in the area," and observed that:

[D]espite the majority's statement that its decision is consistent with previous cases, recent history has shown that the court has been anything but clear and consistent in its postrelease-control cases, in which it has followed various lines of reasoning only to change or reverse course when the consequences of this reasoning become unworkable. *Id*. at ¶ 20.

**{¶ 70}** Another dissenting justice focused on the fact that the trial court did, in fact,

impose post-release control, even though the time imposed was less than required by statute. *Id.* at ¶ 33. This dissent stressed that the defendant had received notice, "both at the sentencing hearing and in the sentencing entry, that he would be supervised by the Adult Parole Authority for up to three years after his release from prison." *Id.* at ¶ 34.

{¶ 71}    In *Jordan*, the court had not notified the defendant of post-release control at the sentencing hearing. In *Hernandez*, *Billiter*, *Boone*, and *Lynch*, the courts had imposed an unlawful sentence. When the courts imposed the wrong term of post-release control, they "fail[ed] to impose statutorily mandated postrelease control as part of a defendant's sentence." *Fisher*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, at ¶ 26. In *Qualls*, the trial court had imposed the correct post-release control, but did not indicate in the sentencing entry that the notification had been made.

{¶ 72}    In Clark's situation, the trial court imposed the correct lawful term of post-release control and informed him of the correct specific penalties for violating post-release control. In the sentencing entry, the court again imposed the proper lawful term of post release control and ordered the defendant to serve any post-release control ordered by the Parole Board and any prison term for violation of that post-release control.

{¶ 73}    The sentencing entry was "sufficient to afford notice to a reasonable person that the courts were authorizing postrelease control." *Watkins*, 111 Ohio St.3d 425, 2006-Ohio-5082, 857 N.E.2d 78, at ¶ 51. We do not dispute *Billiter's* holding that a void sentence can be attacked at any time. We simply hold that Clark's original sentence was not void; there is no need for a subsequent entry, even if the appellant were still in custody.

{¶ 74}    Accordingly, the assignment of error is overruled, and the judgment of the

trial court is Affirmed.


### III. Conclusion

**{¶ 75}** The judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

HALL, J. and CELEBREZZE, J., concur.

(Hon. Frank D. Celebrezze, Jr., Eighth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Lisa M. Fannin
Melissa M. Prendergast
Hon. Richard J. O'Neill