THE STATE OF OHIO, APPELLEE, *v.* CLINKSCALE, APPELLANT.

[Cite as *State v. Clinkscale,* 122 Ohio St.3d 351, 2009-Ohio-2746.]

*Criminal law — Former Crim.R. 24(G)(2) — The proceedings in which a deliberating juror is dismissed in a capital case, and an alternate juror is seated, must be recorded — Under former Crim.R. 24(G)(2), a juror cannot be replaced by an alternate juror during deliberations in a capital case.*

(No. 2008-1012 — Submitted March 10, 2009 — Decided June 17, 2009.)

Appeal from the Court of Appeals for Franklin County,

No. 06AP-1109, 177 Ohio App.3d 294, 2008-Ohio-1677.

_____

**SYLLABUS OF THE COURT**

1. The proceedings in which a deliberating juror is dismissed in a capital case, and an alternate juror is seated, must be recorded.

2. Under former Crim.R. 24(G)(2), a juror cannot be replaced by an alternate juror during deliberations in a capital case.

_____

**LANZINGER, J.**

{¶ 1} The second trial of appellant, David B. Clinkscale, for a capital offense must be vacated and the case remanded to the trial court because a deliberating juror was replaced with an alternate juror in violation of former Crim.R. 24(G)(2) and because the trial court failed to make a record of the proceedings that resulted in the deliberating juror's dismissal and replacement.

**I. Case Background**

{¶ 2} In September 1997, Clinkscale was indicted on three counts of aggravated murder, one count of attempted aggravated murder, one count of

aggravated burglary, two counts of aggravated robbery, and one count of kidnapping. Each count was accompanied by specifications. The indictment alleged that during a robbery that occurred at the residence of Kenneth Coleman and Todne Williams, Coleman was killed. A jury found Clinkscale guilty of each count, and the trial judge accepted the jury's recommended sentence of life imprisonment without the possibility of parole. *State v. Clinkscale* (Dec. 23, 1999), Franklin App. No. 98AP-1586, 2000 WL 775607. The court of appeals affirmed the conviction, id., and we declined review. *State v. Clinkscale* (2000), 88 Ohio St.3d 1482, 727 N.E.2d 132. In 2004, the United States Court of Appeals for the Sixth Circuit granted Clinkscale a conditional writ of habeas corpus after holding that his trial counsel had been ineffective. *Clinkscale v. Carter* (2004), 375 F.3d 430.

{¶ 3} Clinkscale was retried in 2006, and the jury began its deliberations during the afternoon of Friday, September 8. After approximately 30 minutes of deliberations, the jury sent out a written question asking whether it would receive copies of transcripts or specific testimony. The court responded that the jury was to rely upon its collective memory of the testimony. About one hour later, the jury sent to the court a second question, asking, "What would require declaration of hung jury?" The court replied, "Many more hours of deliberations."

{¶ 4} Ten minutes later, the jury submitted a third question: "We have one member who is not comfortable making a guilty verdict based on the testimony of one person (in this case Todne Williams). This inability is not specific to this witness. The juror does not believe a guilty verdict could ever be declared without more evidence. This issue appears to not be resolvable with more time and discussion. Any advice would be appreciated." Approximately one hour later, the court excused the jurors to their homes for the weekend without responding to the third question.

2

**{¶ 5}** On Monday, September 11, a substitute judge replaced the original trial judge. Before the jury was seated, the judge and counsel for each party discussed the court's forthcoming response to the third jury question. The judge called the jury into the courtroom and then stated, "We have had a juror that has a medical issue who has been excused. So, at this time we are going to swear in the first alternate * * * ." There was no discussion on the record between the court and the parties regarding the need to dismiss the juror. Neither party's counsel objected to the dismissal of one juror or the swearing in of the alternate before the jury resumed its deliberations.

**{¶ 6}** After the alternate juror was sworn in, the court responded to the third jury question and the jury returned to deliberate. Later that day, the jury found Clinkscale guilty of each count.

**{¶ 7}** On October 2, the parties returned to the court for the sentencing phase of the capital proceedings, with the original trial judge resuming his role for the duration of the proceedings. Before the jury was called into the courtroom, Clinkscale's counsel stated that he wanted to address the dismissal of the deliberating juror, with the intention of putting the events of that morning on the record. According to Clinkscale's counsel, on the morning that the juror was replaced, the substitute judge met privately with the juror, who believed she was having heart problems. The judge then dismissed the juror before conferring with the parties' attorneys. Clinkscale's counsel stated that he had wanted to object to the dismissal but did not because the court's attention was focused on the forthcoming response to the third jury question.

**{¶ 8}** The state's counsel remembered the dismissal differently and claimed that the parties' counsel met with the visiting judge and discussed how to proceed with the juror. Clinkscale's counsel stressed that the defense did not agree to dismiss the juror. After listening to the parties, the trial judge stated, "Well, the record is what it is. I mean, we have a record, I assume, what

happened on September the 11th; and that record is not going to be changed. So, that's the way it is."

**{¶ 9}** Following this discussion, the jury was brought into the courtroom for the sentencing phase. After deliberating, the jury returned and recommended a sentence of life imprisonment with parole eligibility after 30 years for the murder charges. The court added time for the additional charges and sentenced Clinkscale to prison for 53 years to life. The court of appeals affirmed the judgment. *State v. Clinkscale*, 177 Ohio App.3d 294, 2008-Ohio-1677, 894 N.E.2d 700.

**{¶ 10}** We accepted jurisdiction over only two of the propositions of law set forth in Clinkscale's discretionary appeal. *State v. Clinkscale*, 119 Ohio St.3d 1444, 2008-Ohio-4487, 893 N.E.2d 515. The first proposition of law states, "It is improper for a substitute trial judge to privately meet with and dismiss a deliberating juror without notifying the parties and providing them an opportunity to question the juror, suggest alternatives to dismissal, or otherwise object, particularly when the dismissed juror is the sole dissenter at the time of her dismissal." The second proposition of law states, "It is improper for a substitute trial judge to dismiss a deliberating juror and then replace her with an alternate in direct contravention of Crim.R. 24(G)(2) which prohibits the substitution of alternate jurors during deliberation, particularly when the dismissed juror is the sole dissenter at the time of her dismissal."

## II. Legal Analysis

### A. *This Is a Capital Case*

**{¶ 11}** Our analysis of this case is guided by the fact that Clinkscale was charged with a capital offense under R.C. 2901.02(B) ("Aggravated murder when the indictment or the count in the indictment charging aggravated murder contains one or more specifications of aggravating circumstances listed in division (A) of section 2929.04 of Revised Code, and any other offense for which death may be

imposed as a penalty, is a capital offense"). Because the jury in his first trial did not recommend the death penalty, the state was barred from seeking the death penalty on retrial. *Bullington v. Missouri* (1981), 451 U.S. 430, 445-446, 101 S.Ct. 1852, 68 L.Ed.2d 270; *Arizona v. Rumsey* (1984), 467 U.S. 203, 212, 104 S.Ct. 2305, 81 L.Ed.2d 164. See *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 147-150. However, Clinkscale's ineligibility for the death penalty did not diminish the fact that he was charged with a capital offense: "An indictment charging aggravated murder and one or more specifications of aggravating circumstances listed in R.C. 2929.04(A) charges a capital offense, irrespective of whether the offender is eligible for the death penalty." *State v. Harwell*, 102 Ohio St.3d 128, 2004-Ohio-2149, 807 N.E.2d 330, syllabus.

### B. The Record

{¶ 12} The conversation between the substitute judge and the dismissed juror was not put on the record, and the parties offer differing accounts of the proceedings on that morning. The Rules of Criminal Procedure provide that "[i]n serious offense cases, all proceedings shall be recorded." Crim.R. 22. The Rules of Appellate Procedure offer additional instructions specific to capital trials: "In all capital cases the trial proceedings shall include a written transcript of the record made during the trial by stenographic means." App.R. 9(A). When considered together, the Rules of Criminal Procedure and the Rules of Appellate Procedure clearly require that a complete and accurate record be created in capital cases. The reason for this is simple: the unique nature of capital cases demand a heightened level of care in constructing the record to guarantee regularity of the proceedings and assist in appellate review.

{¶ 13} This court has recognized that gaps may occur and that "[t]he requirement of a complete, full, and unabridged transcript in capital trials does not mean that the trial record must be perfect for purposes of appellate review." *State*

*v. Palmer* (1997), 80 Ohio St.3d 543, 687 N.E.2d 685, syllabus. In *Palmer*, this court held that the failure to record a jury view and conferences in the judge's chambers or at the bench did not warrant reversal when the appellant had not requested that the view or the conferences be recorded and did not demonstrate that any prejudice arose from the failure to record those proceedings. Id. at 560. The court also stated that the "reversal of convictions and sentences on grounds of some unrecorded bench and chambers conferences, off-the-record discussions, or other unrecorded proceedings will not occur in situations where the defendant failed to demonstrate that (1) a request was made at trial that the conferences be recorded or that objections were made to the failures to record, (2) an effort was made on appeal to comply with App.R. 9 and to reconstruct what occurred or to establish its importance, and (3) material prejudice resulted from the failure to record the proceedings at issue." Id. at 554.

{¶ 14} There are legitimate competing arguments as to whether the application of the test outlined in *Palmer* to Clinkscale's case would warrant reversal. It is important to emphasize, however, that *Palmer* addresses the failure to record relatively unimportant portions of a trial. In *Palmer*, this court noted that most of the conferences at the bench and in chambers were recorded and that "all crucial aspects of the case" were recorded. 80 Ohio St.3d at 555, 687 N.E.2d 685. None of the unrecorded conferences concerned a matter as important as the dismissal of a deliberating juror.

{¶ 15} In marked contrast to the portions of the *Palmer* trial that went unrecorded, the recording of proceedings related to the dismissal and replacement of a deliberating juror is of critical importance to protecting a defendant's constitutional rights. "A fair trial in a fair tribunal is a basic requirement of due process. * * * [O]ur system of law has always endeavored to prevent even the probability of unfairness." *In re Murchison* (1955), 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942. Because the composition of the jury in a capital case

6

implicates important constitutional rights, we decline to extend the holding of *Palmer* to encompass a trial court's failure to record proceedings relating to the dismissal of a juror in a capital case after the jury has begun its deliberations.

**{¶ 16}** In this case, when proceedings resumed for the sentencing phase of the trial, defense counsel took sufficient measures, as required by *Palmer,* to give notice that a deficiency in the record existed and to appropriately remedy the deficiency. Clinkscale's counsel initiated a discussion on the record in an attempt to clarify the record regarding the juror's dismissal: "[T]here's one more thing I think we need to put on the record." This amounted to an objection to the failure of the trial court to record the proceedings. While he did not state "I object," the attorney's statement was sufficient to alert the trial court that the record was inadequate. Furthermore, the attempt to address the deficiency in the record was sufficient in this context to satisfy the concerns of App.R. 9, which provides, "If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation, or the trial court, either before or after the record is transmitted to the court of appeals * * * may direct that omission or misstatement be corrected, and if necessary that a supplemental record be certified and transmitted." App.R. 9(E).

**{¶ 17}** Appellee contends that review is precluded because appellant placed his objection to the dismissal of the juror on the record at the sentencing hearing instead of using App.R. 9 to supplement the record. However, the timing of the objection is not as important as appellant's attempt to address the deficiency during the sentencing phase of the trial. What is of concern is the trial court's failure to make either party's rendition official, stating, "Well, the record is what it is. * * * [T]hat record is not going to be changed."

**{¶ 18}** Finally, Clinkscale suffered material prejudice from the trial court's failure to make a record of the dismissal of the juror. We cannot determine whether the trial court obtained a waiver or consent from either party

before dismissing the juror. We are also left to speculate about the reason the juror asked to be removed, the true severity of the juror's health problem, whether the trial could have been continued, or whether any alternative measures may have been taken to address the situation. Most significant, perhaps, is that we are unable to determine whether the substitute judge's action affected any of Clinkscale's constitutional rights, because we are unable to discern whether the juror was, as argued, a lone dissenting juror who wished to be dismissed for this reason.

{¶ 19} Typically, "[w]hen portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199, 15 O.O.3d 218, 400 N.E.2d 384. However, the important constitutional rights at issue here demand that we not apply that presumption in this case.

{¶ 20} In light of the prejudice suffered by appellant because of the trial court's failure to record the proceedings in question, and given appellant's notification to the trial court of the omission in the record, we hold that the failure to record the proceedings relating to the juror's dismissal in this capital case violated appellant's due process right to a fair trial, and appellant's conviction must be reversed.

*C. Crim.R. 24 Violation*

{¶ 21} The dissent argues that it would apply a plain error analysis to the trial court's failure to record the proceedings related to the juror's dismissal and would affirm because it concludes that Clinkscale has failed to demonstrate reversible error; however, in doing so it fails to recognize that the trial court committed a second error when the juror was dismissed in violation of former Crim.R. 24(G)(2). In the version of the rule effective at the time of trial, Crim.R.

24(G)(2) provided, "The procedure designated in division (F)(1) of this rule [for seating an alternate juror] shall be the same in capital cases, except that any alternate juror shall continue to serve if more than one deliberation is required. If an alternate juror replaces a regular juror after a guilty verdict, the court shall instruct the alternate juror that the juror is bound by that verdict. *No alternate juror shall be substituted during any deliberation.* Any alternate juror shall be discharged after the trial jury retires to consider the penalty."[1] (Emphasis added.) Despite the clear statement in former Crim.R. 24(G)(2) that no alternate juror is to be substituted during any deliberation, the judge dismissed a juror and seated an alternate during the deliberation of guilt. Such a clear violation of the Rules of Criminal Procedure cannot be countenanced during a capital trial.

{¶ 22} In the plurality opinion in *State v. Hutton* (1990), 53 Ohio St.3d 36, 559 N.E.2d 432, Chief Justice Moyer foresaw the facts of the present case while analyzing a previous version of Crim.R. 24, which did not allow an alternate juror to be seated after jury deliberations had begun. "If a juror becomes ill or is otherwise disqualified after the jury has begun its deliberations on guilt or innocence, a mistrial results; the state, however, may then retry the defendant." Id. at 47. A trial judge may not act in direct contravention of the Rules of Criminal Procedure. Although appellant did not request a mistrial, the violation of former Crim.R. 24(G)(2) constitutes reversible error.

### III. Conclusion

{¶ 23} Because capital cases are distinct from noncapital cases in the nature of the statutory requirements and penalties, the court must conduct proceedings in capital cases with a strict level of care that comports with their

---

1. In the current version of Crim.R. 24(G)(2), effective July 1, 2008, the language related to the substitution of jurors during deliberations has been eliminated. The rule now provides, "The procedure designated in (G)(1) of this rule shall be the same in capital cases, except that any alternate juror shall continue to serve if more than one deliberation is required. If an alternate juror replaces a regular juror after a guilty verdict, the court shall instruct the alternate juror that the juror is bound by that verdict."

unique status. While we acknowledge that it is less than desirable to have Clinkscale tried for the third time in 12 years, we emphasize that all essential phases of a capital trial must be conducted on the record and in full accordance with the Rules of Criminal Procedure. Therefore, we hold that the proceedings in which a juror is dismissed in a capital case, and an alternate juror is seated, must be recorded. We also hold that under former Crim.R. 24(G)(2), a juror cannot be replaced by an alternate juror during deliberations in a capital case.

**{¶ 24}** We therefore reverse the judgment of the court of appeals and remand the case for proceedings consistent with this opinion.

Judgment reversed

and cause remanded.

MOYER, C.J., and PFEIFER and O'CONNOR, JJ., concur.

LUNDBERG STRATTON, O'DONNELL, and CUPP, JJ., dissent.

————————————

**O'DONNELL, J., dissenting.**

**{¶ 25}** The majority opinion not only charts a new course for this court in capital cases, it also formulates a new analysis for consideration of issues arising out of App.R. 9 and relaxes the appellant's burden to demonstrate error on the record and to file a timely objection.

**{¶ 26}** On September 11, 2006, during jury deliberations in the guilt phase of Clinkscale's retrial, after the jury in his first trial had not recommended the death penalty, the court excused juror number three, who reportedly had heart problems, and seated an alternate juror. Clinkscale did not object at that time. Three weeks later, however, on October 2, the record expressly confirms, in statements made by both defense counsel and the prosecutor, that Clinkscale raised no timely objection:

**{¶ 27}** "MR. SIMMONS [defense counsel]: * * * We wanted to object to that process [of dismissing the juror], but we were still arguing about the

additional jury instruction. So, we never did actually put an objection on the record concerning the excusal of Juror Number Three.

**{¶ 28}** "* * *

**{¶ 29}** "MS. REULBACH [prosecutor]: Then we decided, what are we going to do? Do we let her go to the doctor and come back? And everybody agreed as a group that we would let her go and seat the alternate.

**{¶ 30}** "There never was an objection."

**{¶ 31}** Our jurisprudence requires that a party raising an objection do so in a timely manner. See, e.g., *State v. Peagler* (1996), 76 Ohio St.3d 496, 499, 668 N.E.2d 489 ("Generally, an appellate court will not consider any error that counsel could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court"). Clinkscale did not object at the time the trial court committed the error of which he complains, and his belated efforts only confirm that his objection came too late. That the case involves capital offenses does not relieve him of the obligation to raise a timely objection to preserve error for appeal. See, e.g., *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263, ¶ 155 (holding that a capital defendant can, by failing to object, waive appellate review, other than plain-error review, of a claim under *Atkins v. Virginia* (2002), 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335, that executing a mentally retarded person violates the Eighth Amendment's proscription against cruel and unusual punishment). And a party who fails to object forfeits all but plain error. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 23-24.

**{¶ 32}** In *State v. Palmer* (1997), 80 Ohio St.3d 543, 554, 687 N.E.2d 685, the court expressly declined to recognize a presumption of prejudice from the existence of unrecorded bench and chambers conferences in capital cases. Rather, the court emphasized that the appellant bore the burden to "affirmatively demonstrate any material prejudice resulting from the unrecorded matters." Id.

Further, the court stated, "[R]eversal of convictions and sentences on grounds of some unrecorded bench and chambers conferences, off-the-record discussions, or other unrecorded proceedings will not occur in situations where the defendant has failed to demonstrate that (1) a request was made at trial that the conferences be recorded or that objections were made to the failures to record, (2) an effort was made on appeal to comply with App.R. 9 and to reconstruct what occurred or to establish its importance, and (3) material prejudice resulted from the failure to record the proceedings at issue." Id., citing *State v. Grant* (1993), 67 Ohio St.3d 465, 481-482, 620 N.E.2d 50; *State v. Davis* (1991), 62 Ohio St.3d 326, 347, 581 N.E.2d 1362; *State v. Spirko* (1991), 59 Ohio St.3d 1, 15-16, 570 N.E.2d 229; *State v. Jells* (1990), 53 Ohio St.3d 22, 32, 559 N.E.2d 464; *State v. Tyler* (1990), 50 Ohio St.3d 24, 41-42, 553 N.E.2d 576; *State v. Brewer* (1990), 48 Ohio St.3d 50, 60-61, 549 N.E.2d 491.

{¶ 33} I disagree with the majority's conclusion that "defense counsel took sufficient measures, as required by *Palmer*, to give notice that a deficiency in the record existed and to appropriately remedy the deficiency." Clinkscale did not meet the test established in *Palmer*.

{¶ 34} First, he raised no timely objection to the court's ex parte communication with the juror, its substitution of that juror with an alternate, or its failure to record that part of the proceeding. Instead, he waited three weeks to assert any error, after the trial court had excused the deliberating juror and seated an alternate and after the jury had returned a guilty verdict.

{¶ 35} Second, Clinkscale made no effort to comply with App.R. 9(C), which provides: "If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement shall be served on the appellee no later than twenty days prior to the time for transmission of the record pursuant to

12

App.R. 10, who may serve objections or propose amendments to the statement within ten days after service. The statement and any objections or proposed amendments shall be forthwith submitted to the trial court for settlement and approval. The trial court shall act prior to the time for transmission of the record pursuant to App.R. 10, and, as settled and approved, the statement shall be included by the clerk of the trial court in the record on appeal." Clinkscale did not attempt to prepare an App.R. 9(C) statement to settle any disputed facts in the record.

{¶ 36} Third, Clinkscale has failed to affirmatively demonstrate any material prejudice. Rather, he presents this court with mere speculation that the substitution of juror number three broke a jury deadlock and resulted in his conviction. However, the record does not demonstrate the prejudice that Clinkscale alleges; rather, it is unclear whether the trial court dismissed the lone dissenting juror. Thus, Clinkscale " 'has not contradicted the presumption of regularity accorded all judicial proceedings.' " *State v. Robb* (2000), 88 Ohio St.3d 59, 87, 723 N.E.2d 1019, quoting *State v. Hawkins* (1996), 74 Ohio St.3d 530, 531, 660 N.E.2d 454.

{¶ 37} Therefore, Clinkscale has failed to demonstrate reversible error regarding the trial court's failure to record its communications with the dismissed juror.

{¶ 38} Similarly, Clinkscale has failed to demonstrate plain error relating to the substitution of the deliberating juror. The Ohio and Federal Rules of Criminal Procedure both formerly prohibited the substitution of a juror once deliberations had commenced. However, Ohio and federal appellate courts have recognized that plain-error review applies to violations of the former versions of Crim.R. 24(G)(2) and Fed.R.Crim.P. 24(c)(3). See, e.g., *Claudio v. Snyder* (C.A.3, 1995), 68 F.3d 1573, 1575; *United States v. McFarland* (C.A.9, 1994), 34 F.3d 1508, 1514; *United States v. Quiroz-Cortez* (C.A.5, 1992), 960 F.2d 418,

420 ; *United States v. Hillard* (C.A.2, 1983), 701 F.2d 1052, 1058-1060; *State v. Felder*, Cuyahoga App. No. 87453, 2006-Ohio-5332, ¶ 41; *State v. Fisher* (Mar. 12, 1996), Franklin App. No. 95APA04-437, 1996 WL 112670; *State v. Miley* (1991), 77 Ohio App.3d 786, 790, 603 N.E.2d 1070; see also 2 Wright, Federal Practice and Procedure (3d Ed.2000) 579, Section 388 (explaining that plain-error analysis applied to violations of former Fed.R.Crim.P. 24(c)).

{¶ 39} "Plain error does not exist unless 'but for the error, the outcome of the trial clearly would have been otherwise.' " *State v. Davis*, 121 Ohio St.3d 239, 2008-Ohio-4537, 903 N.E.2d 609, ¶ 11, quoting *State v. Long* (1978), 53 Ohio St.2d 91, 97, 7 O.O.3d 178, 372 N.E.2d 804. Speculation does not suffice to demonstrate plain error. See *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263, ¶ 108 (finding no plain error when the accused's claim "is totally speculative"). The record does not show that juror number three alone held out against a guilty verdict, that she sought to be dismissed because she felt pressured to reach a guilty verdict, or that the jury did not begin deliberations anew with the seating of the alternative juror. The trial court instructed the jury to start its deliberations over, and we presume that juries follow such instructions. *State v. Ahmed,* 103 Ohio St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637, ¶ 147.

{¶ 40} Trial judges must conduct all trial matters on the record, in open court, and with counsel participating when it communicates with a deliberating jury. That did not occur in this instance, but Clinkscale's failure to object and to ensure the completeness of the record precludes all but plain-error review. As the Supreme Court of the United States has recently explained in the context of the excusal of a juror for cause following voir dire in a capital case, "We nevertheless take into account voluntary acquiescence to, or confirmation of, a juror's removal. By failing to object, the defense did not just deny the conscientious trial judge an opportunity to explain his judgment or correct any error. It also deprived reviewing courts of further factual findings that would have helped to explain the

trial court's decision." *Uttecht v. Brown* (2007), 551 U.S. 1, 127 S.Ct. 2218, 2229, 167 L.Ed.2d 1014. Clinkscale has failed to perfect the record for appeal and has not demonstrated reversible error, plain or otherwise. For these reasons, I respectfully dissent.

LUNDBERG STRATTON and CUPP, JJ., concur in the foregoing opinion.

_____

Ron O'Brien, Franklin County Prosecuting Attorney, and Steven L. Taylor, Assistant Prosecuting Attorney, for appellee.

William S. Lazarow, for appellant.

_____