[Cite as *In re A.J.O.*, 2019-Ohio-975.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| IN RE: A.J.O. and M.N.O. | : | APPEAL NO. C-180680<br>TRIAL NO. F15-618Z |
|  | : | *O P I N I O N.* |

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: March 22, 2019

*Jeffrey J. Cutcher*, for Appellant Mother,

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Nick Gramke*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Raymond T. Faller*, Hamilton County Public Defender, and *Jessica Moss*, Assistant Public Defender, Guardian ad Litem for A.J.O. and M.N.O.,

*Susan Basler,* Guardian ad Litem for Appellant Mother.

CROUSE, Judge.

{¶1}    Mother has appealed from the trial court's entry granting permanent custody of her children A.J.O. and M.N.O. to the Hamilton County Department of Job and Family Services ("HCJFS").

{¶2}    In two assignments of error, mother argues that the manifest weight of the evidence does not support termination of her parental rights, and that the trial court erred by allowing counsel for the children to withdraw in violation of the children's due-process rights.

### *Factual Background*

{¶3}    HCJFS became involved in this case due to concerns about domestic violence between appellant ("mother") and Joseph Kidd ("Kidd"), and concerns stemming from mother's failure to address A.J.O.'s and M.N.O.'s developmental delays. A.J.O. and M.N.O. are under the age of 11 and have different fathers. Neither father participated in the case in any way and are deemed to have abandoned their children in accordance with R.C. 2151.414.

{¶4}    On May 16, 2016, HCJFS was granted interim custody of A.J.O. and M.N.O.  On February 22, 2017, A.J.O. and M.N.O. were adjudicated dependent, and HCJFS was granted temporary custody.  HCJFS filed a motion for permanent custody on July 31, 2017.  The permanent-custody trial took place on May 10, 2018, and July 20, 2018.  The magistrate granted permanent custody of A.J.O. and M.N.O. to HCJFS on August 3, 2018.  Mother filed objections to the magistrate's decision,

and an objection hearing was held on November 5, 2018. The trial court adopted the magistrate's decision and entered judgment granting permanent custody to HCJFS.

### *Manifest Weight of the Evidence*

{¶5} In her first assignment of error, mother argues that the trial court erred in granting permanent custody to HCJFS because she had completed, or was making progress on, all case plans and services, and the children could be safely reunited with her within a reasonable time.

{¶6} A trial court's determination awarding permanent custody must be supported by clear and convincing evidence. *In re W.W.,* 1st Dist. Hamilton No. C-110363, 2011-Ohio-4912, ¶ 46. Clear and convincing evidence is evidence sufficient to "produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. In the context of a permanent-custody motion, a reviewing court will not reverse a decision when the court "correctly applied the best-interests test and the custody decision was amply supported by competent evidence in the record." *In re Allah,* 1st Dist. Hamilton No. C-040239, 2005-Ohio-1182, ¶ 11; *see Myers v. Garson,* 66 Ohio St.3d 610, 614, 614 N.E.2d 742 (1993).

{¶7} When children have been previously adjudicated dependent and temporary custody has been granted to HCJFS pursuant to R.C. 2151.353(A)(2), HCJFS may then move for permanent custody of the children pursuant to R.C. 2151.413(A) and 2151.414. The court will grant permanent custody to HCJFS if a two-prong test is satisfied. *See* R.C. 2151.414(B).

3

1. First Prong – R.C. 2151.414(B)

{¶8}     The first prong can be satisfied by any one of five conditions, including if the children have been in the custody of a children's services agency for at least 12 months of a consecutive 22-month period ("12 of 22" provision).     R.C. 2151.414(B)(1)(d).

{¶9}     The children had been in the custody of HCJFS for over 12 months at the time the permanent-custody motion was filed, satisfying the "12 of 22" condition. The children were removed from the home and placed in the interim custody of HCJFS on May 16, 2016.  The children are considered to have been in the custody of HCJFS since July 15, 2016, 60 days after removal, pursuant to R.C. 2151.414(B)(1). The permanent-custody motion was filed on July 31, 2017.  The parties do not dispute that the children were in the custody of HCJFS for 12 months of a 22-month period.

2. Second Prong – R.C. 2151.414(D)

{¶10} The second prong requires the court to find that it is in the best interest of the child to grant permanent custody to the agency.  *See* R.C. 2151.414(B)(1).

{¶11} Pursuant to R.C. 2151.414(D)(1), the court may find that permanent custody is in the best interest of the child upon consideration of all relevant factors, including:

> (a) the child's relationships with the parents, siblings, foster caregivers, and any other person who may significantly affect the child,

(b) the wishes of the child, with consideration granted for their maturity,

(c) the custodial history of the child, including whether the child has been in the custody of a public child services agency for 12 or more months in a consecutive 22 month period, and

(d) the child's need for a legally secure permanent placement.

{¶12} Mother is unable to satisfy the children's need for secure permanent placement due to her abusive relationship with Kidd and her inability to manage her children's developmental delays and behavior issues.

{¶13} Kidd was charged with domestic violence, convicted of assaulting mother in October 2017, and placed on probation. He and mother resumed a relationship shortly after he got out of jail in February 2018. Kidd's mother, Rose Grubbs, testified at the custody trial that she saw Kidd and mother in a car together the same day he was released from jail. Kidd testified that he went over to mother's house an average of three times per week, staying overnight each time. On several occasions after Kidd got out of jail, Grubbs observed him receive phone calls from mother. Grubbs also observed mother in Kidd's car when Kidd came to Grubbs's house in early 2017. Mother even misled representatives of the Family Nurturing Center and HCJFS about her relationship with Kidd when she told them he had not been in her house since October 2016.

{¶14} The children fear Kidd. They told Lashawn Nelson, mother's HCJFS caseworker, that they were scared of Kidd and what he would do to them and their mother when he got angry. In addition to the violence Kidd perpetrated on mother, there were also concerns that he had sexually abused the children. According to

Nelson's testimony, the children told their foster mother about the sexual abuse, but Nelson was unable to gather enough information to substantiate their claims. A.J.O. would not talk to Nelson about it at all, and M.N.O. only told her that Kidd "did nasty things."

{¶15} Mother was referred for a domestic-violence assessment three times before she completed the assessment. It was not until Nelson brought the domestic-violence assessor to mother during one of her supervised visitations that mother actually completed the assessment. Mother completed domestic-violence classes in November 2017, but she continued her relationship with Kidd even after completing the assessment and classes. Although mother lived in the same home throughout the pendency of the case, she refused to allow Nelson to come inside the home and do a home assessment.

{¶16} Nelson testified that the behaviors of A.J.O. and M.N.O. create parenting challenges. Both children suffer from ADHD and are on medication. M.N.O. bullies and picks fights in the foster home. A.J.O. has significant cognitive delays and an IQ of 50. He chews and ingests inedible items such as clothing and toys. A.J.O. also regularly urinates and defecates in places other than the toilet. Both children have Individual Education Plans ("IEP") at school. Mother failed to consistently attend meetings at the school regarding the children's IEPs. Furthermore, A.J.O. and M.N.O. were placed in separate foster homes due to the violent behavior they displayed towards each other.

{¶17} Victoria Hitchens, a facilitator at the Family Nurturing Center, oversaw mother's visits with A.J.O. and M.N.O. for a two-month period. She

testified that the children have a loving bond with mother and mother consistently attended her visitations with the children.

{¶18} Nevertheless, both Nelson and Hitchens expressed concerns regarding mother's parenting skills and her ability to manage the children's developmental delays based on their observations of visitations. The children frequently misbehaved during visitations, and mother often could not manage the children's behavior on her own. After two years of visitations, mother's visits were still at the facilitated level, indicating a lack of progress on her part to learn to manage her children's behaviors. Mother's own IQ is around 50, and there are concerns regarding her understanding of the children's medical and mental-health needs and her ability to get them to medical appointments and make sure they take their medication.

{¶19} Both children expressed wishes to live with mother, but only if Kidd was not around. Both children are under the age of 11, and A.J.O. is cognitively delayed. In consideration of all of these factors, the children's guardian ad litem ("GAL") advocated for a grant of permanent custody to HCJFS at the custody hearing.

{¶20} As discussed above, the "12 of 22" provision is satisfied because the children were in the custody of HCJFS for 12 months out of a 22-month period.

{¶21} Mother's parents indicated that they would be a support network for her, but their homes are not suitable for placement of the children due to past HCJFS concerns regarding substance abuse and violence.

{¶22} Mother did show some progress on her case plan and services. According to her therapist, she completed a psychological evaluation, regularly attended her individual therapy sessions, was engaged in the sessions, and made

progress. Despite this progress, she repeatedly failed to substantially remedy the concerns which caused the children to be removed from the home.

{¶23} "Although the termination of the rights of a natural parent should be an alternative of 'last resort,' such an extreme disposition is nevertheless expressly sanctioned [under R.C. 2151.353] when it is necessary for the 'welfare' of the child." *In re Cunningham,* 59 Ohio St.2d 100, 105, 391 N.E.2d 1034 (1979), quoting *In re Fassinger,* 42 Ohio St.2d 505, 330 N.E.2d 431 (1975). Considering all of the relevant factors under R.C. 2151.414(D)(1), particularly mother's abusive relationship with Kidd, the trial court correctly applied the best-interest test.

{¶24} There is ample competent evidence in the record to support the trial court's finding that both prongs of R.C. 2151.414(B) were satisfied and that a grant of permanent custody to HCJFS is necessary for the welfare of the children.

### *Withdrawal of Children's* In re Williams *Counsel*

{¶25} In her second assignment of error, mother argues that the trial court erred by allowing counsel for the children to withdraw in violation of the children's due-process rights and Loc.Juv.R. 12(D).

{¶26} A mother has standing to assert her child's right to an attorney during permanent-custody proceedings. *In re Clark,* 141 Ohio App.3d 55, 60, 749 N.E.2d 833 (8th Dist.2001).

{¶27} Mother raises this issue for the first time on appeal. A party raising an objection must do so in a timely manner or risk waiving the issue for appeal. *See State v. Clinkscale,* 122 Ohio St.3d 351, 2009-Ohio-2746, 911 N.E.2d 862, ¶ 31. An appellate court usually will not consider an error that counsel could have called, but did not call, to the trial court's attention at a time when the trial court could have

fixed the error. *State v. Peagler,* 76 Ohio St.3d 496, 499, 668 N.E.2d 489 (1996). Absent a timely objection, the court will merely review for plain error. *See Saqr v. Naji*, 1st Dist. Hamilton No. C-160850, 2017-Ohio-8142, ¶ 15. Only when an error is obvious and must have affected the outcome of the trial will an appellate court grant relief under the plain-error doctrine. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E. 306, ¶ 16.

{¶28} Loc.Juv.R. 12(D) allows counsel to withdraw by oral motion if no party is prejudiced as a result. An independent attorney (*In re Williams* attorney) was appointed for A.J.O. and M.N.O. in October 2017. A child subject to a permanent-custody hearing is entitled to counsel independent from the GAL when the child's wishes are contrary to the GAL's recommendation. *In re Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500, 805 N.E.2d 1100, ¶ 29; *In re Walling*, 1st Dist. Hamilton No. C-050646, 2006-Ohio-810, ¶ 24. A court considers the age and maturity of the children in assessing their wishes in a permanent-custody action. *In re Williams* at ¶ 31.

{¶29} At the beginning of the May 10, 2018 hearing, the children's *In re Williams* counsel orally requested to withdraw from the case after she represented to the magistrate that the children's wishes were consistent with the GAL's recommendation of granting permanent custody to HCJFS. All parties were given an opportunity to object to the request to withdraw and none did. The court granted counsel's request to withdraw. Mother also failed to raise an objection to counsel's withdrawal during the November 5, 2018 objection hearing. Mother's second assignment of error receives plain-error analysis.

{¶30} The *In re Williams* attorney told the court at the May 10, 2018 hearing that she spoke with the children twice after being appointed in October 2017, and the children consistently indicated that they did not wish to live with mother as long as Kidd was around. The GAL's recommendation to the court of a grant of permanent custody to HCJFS was based in part on the continued presence of Kidd in mother's life.

{¶31} In support of her argument that the children's wishes conflicted with the GAL's recommendations, mother points to the May 10, 2018 testimony of Nelson, who said that the children desired to live with mother so long as Kidd was not around. Nelson garnered this information in mid-2017. Kidd testified that he and mother had been in a relationship a week prior to the July 20, 2018 hearing. At the November 5, 2018 hearing mother's counsel told the court that she had just recently filed new charges against Kidd, indicating contact between Kidd and mother even after the July 20, 2018 hearing.

{¶32} Both the children and the GAL agreed that the children should not live with mother as long as Kidd was in the picture. Ample testimony demonstrated that mother continued to have a relationship with Kidd even after his release from jail, the children were removed from the home, and the court conducted the permanent-custody hearing.

{¶33} Considering the ages and developmental deficits of A.J.O. and M.N.O., their desire to return home only if circumstances were different, and the continued presence of Kidd in mother's life, the children's wishes were not contrary to the GAL's recommendation.

{¶34} Because no conflict was created by the testimony brought out at the hearing, the court's allowance of the withdrawal of the *In re Williams* attorney was not plain error.[1]

### Conclusion

{¶35} There is ample competent evidence in the record supporting the trial court's decision to grant permanent custody to HCJFS pursuant to R.C. 2151.414. The magistrate's decision allowing the children's *In re Williams* attorney to withdraw was not plain error. For these reasons, mother's two assignments of error are overruled. The judgment of the trial court is affirmed.

Judgment affirmed.

**MYERS, P.J.,** and **WINKLER, J.,** concur.

Please note:
The court has recorded its own entry on the date of the release of this opinion.

---

[1] The Court notes that the better practice would have been for the *In re Williams* attorney to have remained on the case for the duration of the permanent-custody hearing in order to ensure that the children were properly represented.