[Cite as *In re K.W.*, 2019-Ohio-2936.]

# IN THE COURT OF APPEALS
## FIRST APPELLATE DISTRICT OF OHIO
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: W. CHILDREN. | : | APPEAL NOS. C-190245 |
| | | C-190246 |
| | : | TRIAL NO. F07-1763Z |
| | : | *O P I N I O N.* |

Appeals From:  Hamilton County Juvenile Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  July 19, 2019

*Phyllis Schiff*, for Appellant Mother,

*Cynthia Daugherty, In re Williams* Attorney, for Appellants K.W. and K.W.,

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Patsy Bradbury*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Raymond T. Faller*, Hamilton County Public Defender, and *Amanda Robinson*, Assistant Public Defender, Appellee Guardian ad Litem for K.W. and K.W.

**MOCK, Presiding Judge.**

{¶1}   Mother appeals the trial court's judgment terminating her parental rights with respect to her two youngest children, K.W.1, currently nine years old, and K.W.2, currently six years old.  The children, through their *In re Williams* attorney, also appeal the trial court's judgment granting permanent custody to the Hamilton County Department of Job and Family Services ("HCJFS").  For the following reasons, we affirm.

{¶2}   Mother first had contact with HCJFS in December 2007 when her three older children were removed from her care.  The children were removed from the home when, on two separate occasions, the children's daycare provider returned the children to their home to find that mother was not present and no childcare had been arranged.  The juvenile court adjudicated the three older children dependent, and granted legal custody of mother's son to the child's father, and legal custody of mother's two older daughters to paternal grandparents.  The court based its decision on the facts that mother suffered from an untreated mental-health issue, had not complied with her case-plan services, including urine screens, and had not visited with the children regularly or attended the most recent court hearings.

{¶3}   In 2010, mother gave birth to K.W.1 and, three years later, gave birth to K.W.2.  In 2014, mother moved for custody of her two older daughters who were in the legal custody of their paternal grandparents.  The paternal grandparents, believing that mother was now able to parent appropriately, supported mother's motion and the trial court granted legal custody to mother.  A year later, the paternal grandparents moved to regain custody of the two older children based on the children's report that mother was staying out all night, calling them names, hitting them and withholding food from them.

{¶4} In June 2015, HCJFS removed all four children from mother's care based on the allegation that mother had stomped and punched K.W.2 causing her injury. HCJFS investigated, and the two older children admitted that mother had "stomped, punched and kicked" K.W.2. HCJFS implemented a safety plan, placing the two older girls with their paternal grandparents and placing K.W.1 and K.W.2 with mother's former foster parent. Unfortunately, mother's behavior disrupted the safety plan for K.W.1 and K.W.2, causing HCJFS to move for interim temporary custody of all four girls. Mother agreed to interim custody, and the court ordered that the two older children remain with their paternal grandparents and K.W.1 and K.W.2 be placed in foster care.

{¶5} The juvenile court adjudicated all four children dependent in May 2016, and awarded legal custody of the two older children to paternal grandparents and ordered K.W.1 and K.W.2 to remain in the temporary custody of HCJFS. The court ordered mother to participate in supervised visitation, case management, parenting classes, and toxicology screens and to follow any recommendations from a diagnostic assessment performed by Family Access to Integrated Recovery ("FAIR").

{¶6} FAIR recommended that mother participate in individual counseling to work on her impulse control and anger issues. Mother did not report any substance-abuse issues at that time. Mother began individual therapy through Greater Cincinnati Behavioral Health ("GCB") but in the December 2015 semi-annual review, HCJFS reported that mother's therapist believed mother required more intensive services than GCB could provide. Mother reported at that time that she had been diagnosed with depression and bipolar disorder. Mother eventually stopped attending therapy.

{¶7}   In the summer of 2016, mother was convicted of criminal simulation and the unauthorized use of a motor vehicle.  She was sentenced to 11 months of community control.  She was also involved in a domestic-violence incident in 2016 with the father of K.W.2, who was arrested but not convicted because mother refused to testify against him.  K.W.2's father reported that the domestic dispute was caused by mother stealing drugs that he had been selling out of mother's home.  HCJFS reported that mother tested positive for cocaine in the summer of 2016.  Mother admitted to recreational use but reported that she was not addicted.

{¶8}   In December 2016, mother testified positive for alcohol during a toxicology screen, and one month later tested positive for cocaine.  HCJFS referred mother to FAIR for another diagnostic assessment.  FAIR recommended mother start outpatient drug treatment as well as resume mental-health treatment.  Mother attended an intake meeting at the Talbert House for substance-abuse and mental-health treatment, but Talbert House discharged mother in March 2017 because she had not been participating in services.  Around that time mother requested that HCJFS investigate an aunt and a family friend as possible legal custodians of the children, but those suggested people were unwilling or unable to care for the children.

{¶9}   In April 2017, HCJFS moved for permanent custody of the children, and reported to the court, at the semiannual review, that K.W.1 and K.W.2 were still residing in the same foster home, that foster mother participated in therapy with them and that the children displayed a bond with their foster mother.  During this review, HCJFS also reported that K.W.1 was addressing separation issues in therapy and had expressed "a fear of going home to mother."  Further, K.W.1 had an "episode" at school, which K.W.1 explained was caused by her fear that she was going

to be returned to her mother's care. With respect to K.W.2, her therapist testified at the permanent-custody proceeding that K.W.2 did not discuss her mother at all during therapy, but indicated that her foster mother "takes good care of her." Her therapist then concluded that K.W.2 was "presenting as calmer in the foster care setting" and that a change of environment, i.e., returning to mother's care, would not be in K.W.2's best interest.

{¶10} In September 2017, mother began participating in mental-health and substance-abuse treatment at the Talbert House. In early 2018, coinciding with the start of the permanent-custody proceeding, mother began supervised visitation with K.W.1 and K.W.2 at the Family Nurturing Center. During the permanent-custody proceeding, in April 2018, mother again tested positive for cocaine. At the conclusion of the custody proceeding, the juvenile magistrate granted HCJFS's motion for permanent custody. The mother and the children each filed objections to the magistrate's decision, which the juvenile court overruled.

{¶11} Mother and the children, through their *In re Williams* attorney, now appeal the trial court's judgment terminating mother's parental rights and granting permanent custody of K.W.1 and K.W.2 to HCJFS. Both appeals raise the same single assignment of error, which we consider together: that the juvenile court erred by granting permanent custody to HCJFS. We are unpersuaded.

### *Standard of Review*

{¶12} The termination of parental rights is governed by R.C. 2151.414. Before a juvenile court may terminate parental rights, it must find that it is in the child's best interest to be placed in the permanent custody of the moving agency. R.C. 2151.414(B)(1) and (D). It must also find one of the four conditions listed in R.C. 2151.414(B)(1) exists. One of those conditions is that "[t]he child has been in the

temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period[.]" R.C. 2151.414(B)(1)(d). The court must find both prongs by clear and convincing evidence. We will not substitute our judgment for that of the trial court where there is competent and credible evidence supporting the trial court's determination. *See, e.g., In re W.W.*, 1st Dist. Hamilton Nos. C-110363 and C-110402, 2011-Ohio-4912, ¶ 46; *In re A.J.O. and M.N.O.*, 1st Dist. Hamilton No. C-180680, 2019-Ohio-975, ¶ 6.

{¶13} Here, the trial court determined that the condition listed in R.C. 2151.414(B)(1)(d) applied. In order to fulfill that condition, "[t]he child has [to have] been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period[.]" A child is considered to have entered the temporary custody of an agency, for the purposes of R.C. 2151.414(B)(1), on the earlier of the date the child is adjudicated or the date that is 60 days after the removal of the child from the home. Here, K.W.1 and K.W.2 were removed from mother's home on June 9, 2015. Sixty days after the children's removal is August 8, 2015. At the time the permanent-custody motion was filed on April 24, 2017, K.W.1 and K.W.2 had been in the temporary care of HCJFS for 20 months. Given that there is competent and credible evidence to support the trial court's determination that the condition set forth in R.C. 2151.414(B)(1) was met, we turn to the second prong of the test.

### *Best Interest*

{¶14} In assessing the best interest of a child for purposes of a permanent-custody determination, a juvenile court must consider all relevant factors, including: (a) the child's interaction with parents, siblings, relatives, foster caregivers and out-

6

of-home providers, and any other person who may significantly affect the child; (b) the wishes of the child, with due regard for the maturity of the child; (c) the custodial history of the child, including whether the child has been in the temporary custody of a public children services agency for twelve or more months of a consecutive twenty-two-month period; (d) the child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody; and (e) whether any of the factors under R.C. 2151.414(E)(7) to (11) apply. *See* R.C. 2151.414(D)(1)(a)-(e); *In re Z.P.*, 1st Dist. Hamilton Nos. C-160572, C-160584 and C-160620, 2018-Ohio 6987, ¶ 31.

{¶15} A review of the record demonstrates that there is ample competent and credible evidence to support the juvenile court's determination that a grant of permanent custody to HCJFS is in the children's best interest.

{¶16} **R.C. 2151.414(D)(1)(a).** Before addressing mother's relationship with the children, we note that K.W.1's father is deceased. K.W.2's father has a history of domestic violence with mother, as well as a significant history of other criminal activity. K.W.2's father did not participate in case services offered by HCJFS and has no bond or relationship with his daughter.

{¶17} With respect to mother, the record demonstrates that she has a bond with the children and has visited with the children throughout the pendency of the case, although not consistently. For example, there was a six-month period where mother visited the children only once. During HCJFS's three-year period working with mother, her time with the children never advanced beyond supervised visitation. The children are doing well with their foster family and have a bond with their foster mother, who participates in their therapy. Further, K.W.2's therapist

testified that K.W.2 was calmer in the foster placement and that it would not be in K.W.2's best interest to change her environment.

{¶18} **R.C. 2151.414(D)(1)(b).** The children, through their *In re Williams* attorney, indicated that they do not want their relationship with their mother to be permanently severed but they did not indicate that they wanted to live with mother. K.W.1 acted out at school because she feared being returned to her mother's care. K.W.2's therapist testified that K.W.2 did not speak of her mother during therapy but reported that she liked her foster mother.

{¶19} The children's guardian ad litem ("GAL") supported a grant of permanent custody to HCJFS. The GAL reported that mother's "lackluster" engagement with services, i.e., inconsistent participation in mental-health treatment, testing positive several times for cocaine, including during the permanent-custody hearing, as well as being convicted of two crimes, indicates that it is not in the best interest of the children to be returned to mother's care.

{¶20} **R.C. 2151.414(D)(1)(c).** The children have been out of mother's care for far more than 12 out of 22 consecutive months. In fact, the children have been out of mother's care for almost four years, more than half of K.W.2's life.

{¶21} **R.C. 2151.414(D)(1)(d).** The children are in need of a legally secure placement and this cannot be achieved without a grant of permanent custody. Mother tested positive for cocaine three times after the children were removed from the home, the last time being in April 2018, during the permanent-custody proceeding. At the time of the permanent-custody proceeding, mother did not demonstrate a positive, sustained behavior change with respect to her sobriety.

{¶22} **R.C. 2151.414(D)(1)(3).** None of the factors set forth in R.C. 2151.414(E)(7) through (11) apply to mother.

{¶23}   Based on the foregoing, we hold that there was competent and credible evidence to support the juvenile court's determination that it was in the best interest of the children to grant permanent custody of the children to HCJFS.

{¶24} Accordingly, in the appeal numbered C-190245, mother's single assignment of error is overruled, and the judgment of the trial court is affirmed.  In the appeal numbered C-190246, the children's single assignment of error is overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

**BERGERON** and **CROUSE**, **JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.